PETER J. SODERMAN, Respondent, *v.* THE TROY STEEL AND IRON COMPANY, Appellant.

*Master and servant — negligence — measure of damages.*

In an action to recover for injuries sustained by an employee in good health, fifty-six years old, and earning at the time of the accident about two dollars per day, where the injury is of a permanent character and the employee is rendered practically unable to perform manual work, a verdict for $1,000 against his employer, through whose alleged negligence the accident resulting in this injury occurred, is not excessive.

Where, in an action to recover damages resulting from an injury caused by the alleged negligence of an employer in furnishing a defective dump car, the evidence tends to show that the car became so far defective, by reason of certain hooks attached to a cross bar used in dumping the contents of the car having become straightened, so as to set the car box moving laterally and thereby to cause it to dump its contents while the train was in motion, the question of negligence on the part of the employer should be submitted to the jury.

APPEAL by the defendant, the Troy Steel and Iron Company, from a judgment of the Supreme Court entered in the office of the clerk of the county of Rensselaer on the 22d day of November, 1892, upon the verdict of a jury in favor of the plaintiff for $1,000, rendered at the Rensselaer County Circuit after a trial before the court and a jury; and also from an order entered in said clerk's office, denying the defendant's motion made upon the judge's minutes to set aside the verdict, and for a new trial.

The action was prosecuted to recover damages for injuries sustained by the plaintiff by reason of the alleged negligence of the defendant in furnishing an alleged defective car, upon which the plaintiff was employed to work in transporting slag from defendant's steel works to a dump on defendant's ground where such slag was deposited.

The plaintiff was a common laborer and had been in the employ of the defendant as such for about ten years, and appears to have been subject to the orders and directions of one Babcock, who was boss laborer on defendant's works.

On the 28th of August, 1888, the plaintiff with other employees of the defendant, loaded several cars with this refuse material and ran one train without accident to the dump, discharged the load and backed up to the pit at defendant's furnace, reloaded their train and started again for the dump.

The train was run at about the rate of three or four miles an hour. Before reaching the dump the body of the car on which plaintiff was seated, without any interference by any of the employees, became unhooked from the truck, and dumped its contents, carrying the plaintiff with it, who fell under the loading of the car and was injured.

The car on which the plaintiff was employed was so constructed that the body rested upon the truck and was attached to a center shaft running lengthwise of the box so that the shaft could be moved by a crank at one end.

This shaft was attached to two rollers or wheels, one at each end, about six inches in diameter, which supported the box and aided in moving it. The rollers rested on cross bars running across the car on the truck. On this shaft at its central part under the car is a pinion or small notched wheel. This pinion is so placed as to engage with the rack, which is a flat strip of iron with teeth projecting above it, running transversely across the frame which supported the car box.

When this shaft, which is moved by a crank turned by hand, is set in motion, the teeth of the pinion engaged with the toothed surface of the rack and the box by the aid of the rollers is moved laterally until its center of gravity gets beyond the support, when the box dumps.

There are also two chains connected on the car box with the truck, which prevent the box from passing beyond the point necessary to dump its load. The mode of fastening the car box to the truck is by means of two hooks which are attached to the cross bar, which is immovably fixed to the truck upon the side of the truck opposite to that from which the car dumps. When the car box is in place,

the two hooks attached to this cross bar are hooked over the central shaft. These hooks are fixed by the operatives, and designed to fasten the box in its place.

If the hooks are not adjusted or placed upon the shaft, the box becomes insecure, and the jar incident to the moving of the train would be sufficient to set the car box moving laterally, and cause the dump. The evidence discloses that it was in consequence of these hooks becoming detached that the car box slid laterally as the train was moving, and thus caused the accident. The contention on the part of the plaintiff is that this apparatus was insecure, and that the construction of the car was in this regard generically defective.

There is some evidence in the case on the part of the plaintiff tending to show that one of these hooks had been slightly straightened, and thus rendering it less secure than it would have been if the hook had been as originally intended.

While the witnesses on the part of the plaintiff and defendant all agree as to the general construction of this car, there is a marked difference in their testimony as to whether or not it was the best or most approved method of constructing cars for the purpose for which these cars were used, and there is some evidence tending to show that the defendants at this time were using cars for this purpose of a different construction.

The controversy in this case turns largely upon the sufficiency of this method of construction of cars and the condition of this particular car as to the hook which was intended to hold the body in place.

The theory of the plaintiff was that this accident occurred by reason of the defect in the car, while the contention of the defendant is that the accident resulted from some negligence on the part of plaintiff's co-employees in not adjusting the hook before the starting of the train, and this difference was sharply contested by the evidence on either side.

*R. A. Parmenter*, for the appellant.

*James Lansing*, for the respondent.

PER CURIAM:

The principal question in this case was whether this car was such a reasonably safe car for the plaintiff to work upon as the employer

is required to furnish for the use of its employee. This question, as this case was tried, was one of fact under the evidence, which the jury were called upon to decide, and as the evidence was conflicting, it became their duty to settle that controversy, and there being sufficient evidence in support of the plaintiff's theory to uphold the verdict, this court should not interfere with their determination, unless there is something in the amount of the verdict calculated to show that the jury were influenced by prejudice or passion.

It is urged on the part of the defendant that the verdict was excessive, and the defendant moved to set it aside on that ground, on the trial. We do not think the refusal of the learned trial judge to set aside the verdict as excessive, was erroneous.

The plaintiff was a man in good health, about fifty-six years old, and was earning, at the time of the accident, about two dollars per day.

The evidence discloses that the injury is of a permanent character, and that the plaintiff, by reason of it, is rendered practically unable to perform manual labor.

Upon the evidence, assuming that the jury were right in finding that the injury was the result of defendant's negligence, we cannot see that the verdict of $1,000 was excessive. There were some exceptions taken by the defendant to the ruling of the judge in the reception and rejection of evidence taken upon the trial, and to the judge's charge to the jury.

We have examined these exceptions and see no error committed by the learned judge for which this judgment should be reversed.

Present — MAYHAM, P. J., PUTNAM and HERRICK, JJ.

Judgment affirmed, with costs.